IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 14-96 |
| | : | |
| BLAIR THOMAS | : | |

**McHUGH, J.**                                                                                             **August 31, 2023**

## MEMORANDUM

This is a § 2255 challenge to Defendant's convictions under 18 U.S.C. § 924(c) following the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022). Defendant Blair Thomas argues that his convictions for attempted postal robbery are not proper predicate crimes for § 924(c), rendering the mandatory minimums applied to his sentence illegal. The parties agree that the statute is divisible, and that it is therefore proper to review *Shepard*[1] documents to try to determine under which provision of postal robbery the jury convicted Thomas. The record here does not make that task a simple one. But, after a careful review of the indictment, jury instructions, and verdict form – and specifically the jury interrogatories focused on the Defendant's use of a firearm – I will deny relief as to Count Four and grant relief as to Count Two.

**I.    Relevant Background**

Mr. Thomas was charged in a six-count indictment on February 27, 2014. ECF 6. The Government alleged that, over the course of two days, Thomas attempted two post office robberies and completed one bank robbery. During the first attempted post office robbery, the Government alleged that Thomas gave the clerk a demand note stating he was armed with a gun. During the

---

[1] *Shepard v. United States,* 544 U.S. 13 (2005).

second attempted post office robbery, Thomas allegedly brandished a gun. The six counts of the indictment are as follows:

1. Attempted robbery of a U.S. Postal Service employee of the Yeadon Post Office, in which Thomas "put in jeopardy the life of that employee by the use of a dangerous weapon," in violation of 18 U.S.C. § 2114(a);

2. Knowing use and carry of a firearm during and in relation to a crime of violence (Yeadon Postal Robbery), in violation of 18 U.S.C. § 924(c)(1);

3. Attempted robbery of a U.S. Postal Service employee of the Darby Post Office, in which Thomas "put in jeopardy the life of that employee by the use and brandishing of a dangerous weapon," in violation of 18 U.S.C. § 2114(a);

4. Knowing use and carry of a firearm during and in relation to a crime of violence (Darby Postal Robbery), in violation of 18 U.S.C. § 924(c)(1);

5. Bank robbery, in violation of 18 U.S.C. § 2113(a); and

6. Knowing possession of a firearm while having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

*Id.* Mr. Thomas was convicted by a jury of all six counts, ECF 105 & 106, and he was sentenced to 384 months of incarceration.[2] ECF 145. Specifically, Mr. Thomas was sentenced to twenty-four months on Counts One, Three, Five, and Six, running concurrently; sixty months on Count Two, running consecutively to all counts; and 300 months on Count Four, running consecutively to all counts. Because Mr. Thomas was convicted prior to the First Step Act, his two violations of 18 U.S.C. § 924(c) were stacked, resulting in a mandatory minimum sentence of sixty months for the first violation and a mandatory minimum sentence of 300 months for the second violation. *See* 18 U.S.C. § 924(c)(1)(A)(i) and (C)(i) (2006).

After his conviction was affirmed, Mr. Thomas filed a timely *pro se* § 2255 motion claiming, among other things, that his convictions under § 924(c) were invalid because the applicable predicate offenses – both attempted postal robberies – were not "crimes of violence."

---

[2] This case was transferred to my docket after the jury rendered its verdict but before sentencing. ECF 137.

ECF 160.  I denied that motion in its entirety on June 18, 2019.  ECF 166.  Thomas filed a motion for reconsideration two weeks later, noting that the Supreme Court had since published *United States v. Davis*, 139 S. Ct. 2319 (2019), which narrowed the definition of a "crime of violence" under § 924(c).  ECF 168.  I deferred ruling until the Court of Appeals decided *United States v. Walker*, 990 F.3d 316, 330 (3d Cir. 2021).  Based on the Third Circuit's conclusion that attempted Hobbs Act robbery was still a crime of violence even under the narrower definition in *Davis*, and given the similarities between the two statutes, I held that attempted postal robbery was also still a crime of violence.  ECF 171.

Thomas appealed that decision and, while his appeal was pending, the Supreme Court decided *United States v. Taylor*, 142 S. Ct. 2015 (2022).  *Taylor* abrogated *Walker* and held that attempted Hobbs Act robbery was in fact not a crime of violence under § 924(c) and was thus an improper predicate crime to sustain a § 924(c) conviction.  When Thomas brought this to the Third Circuit's attention, the Government suggested that the Court of Appeals issue a summary remand so that the district court may reexamine, in the first instance, whether attempted postal robbery still qualified as a predicate "crime of violence" under § 924(c) following *Taylor*.  The Third Circuit agreed and entered a summary order remanding the matter on November 14, 2022.

Counsel has been appointed for Mr. Thomas, ECF 178, the matter is briefed, and the central issue remains whether Mr. Thomas was convicted of a "crime of violence" under *Taylor*, such that his convictions can properly serve as predicate crimes for his convictions under 18 U.S.C. § 924(c).

II.   **Discussion**

　　A.  **Legal Background**

18 U.S.C. § 924(c)(1)(A) penalizes "any person who, during and in relation to any crime of violence . . . uses or carries a firearm."  A "crime of violence" under § 924(c) is defined as "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical

3

force against the person or property of another."[3]  18 U.S.C. § 924(c)(3)(A); *see Davis*, 139 S. Ct. at 2324.  To determine whether a conviction meets this definition, courts must employ the categorical approach, which "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [crime], while ignoring the particular facts of the case."  *Mathis v. United States*, 579 U.S. 500, 504 (2016).  Under this approach, "[t]he only relevant question is whether the federal felony at issue *always* requires the government to prove – beyond a reasonable doubt, as an element of its case – the use, attempted use, or threatened use of force."  *Taylor*, 142 S. Ct. at 2020 (emphasis added).

In certain narrow circumstances, a sentencing court may be permitted to go beyond identifying the crime of conviction and reviewing the statutory definition.  *Mathis*, 579 U.S. at 511.  This "modified categorical approach" is relevant when the statute of conviction is divisible, in that it "comprises multiple, alternative versions of a crime."  *United States v. Peppers*, 899 F.3d 211, 231 (3d Cir. 2018) (citing *Descamps v. United States*, 570 U.S. 254, 260-62 (2013)).  When a statute has a divisible structure, the court may look to *Shepard* documents (e.g., the indictment, the jury instructions, verdict forms, or plea agreement and colloquy) to determine for which of a divisible statute's crimes, and which elements, the defendant was convicted.  *Mathis,* 579 U.S. at 500, 505-06; *Johnson v. United States*, 559 U.S. 133, 144 (2010).  The court may then evaluate if that more specific crime categorically qualifies as a crime of violence.  But if the record does not make clear which subsection of the statute is the basis of the conviction, then the court may not apply the modified approach and must proceed with the entire statute.  *See Johnson*, 559 U.S. at 137; *see also Peppers*, 899 F.3d at 232 (explaining that the modified categorical approach is a "useless tool" when there are no *Shepard* documents to identify the relevant statutory subsection).

---

[3] This is widely referred to as the "elements clause," and it is the only remaining definition of a "crime of violence" following *Davis*, 139 S. Ct. at 2319.

In Mr. Thomas' case, the relevant statute of conviction is 18 U.S.C. § 2114(a), criminalizing postal robbery. The statute reads as follows:

> Assault -- A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

The parties agree that the statute is divisible into two clauses: the basic version of crime (before the semicolon) and an aggravated version of the crime (after the semicolon). *See United States v. Thomas*, No. 14-96, 2021 WL 1264172, at *1-2 (E.D. Pa. Apr. 6, 2021) (McHugh, J.) (citing *United States v. Bryant*, 949 F.3d 168, 174 (4th Cir. 2020)); *Gelzer v. United States*, No. 16-6406, 2023 WL 4405668, at *3 (E.D.N.Y. July 7, 2023).[4] The Court may thus look to the available *Shepard* documents to determine the specific crime of conviction in Mr. Thomas' case.

Before doing so, it is worth carefully considering both the aggravated and non-aggravated versions of this offense, and whether either constitute a "crime of violence" for § 924(c). The Government has conceded that, under *Taylor*, attempted postal robbery *simpliciter* is not a crime of violence. ECF 175 at 7. I agree. The attempted aggravated offense, however, is satisfied "if in effecting or *attempting* to effect such robbery [the defendant] wounds the person having custody of such mail . . . *or puts his life in jeopardy by the use of a dangerous weapon*." 18 U.S.C. § 2114(a) (emphasis added). The statute includes within it the requirements for attempted

---

[4] *Gelzer* further notes that "[t]he list of aggravated offenses is divisible too: (1) wounding the mail carrier in the course of the robbery or attempted robbery; (2) using a dangerous weapon to put the mail carrier's life in jeopardy in the course of the robbery or attempted robbery; or (3) committing a subsequent offense. By listing the three as alternatives, they are not 'illustrative examples' of 'a crime's means of commission' but rather elements of separate crimes." 2023 WL 4405668, at *3 (citations omitted).

5

aggravated postal robbery. *See Virella v. United States*, 750 F. Supp. 111, 119-20 (S.D.N.Y. 1990) (citing *United States v. Garcia-Duarte,* 718 F.2d 42, 47 (2d Cir. 1983)) ("[U]nder the second half of 18 U.S.C. § 2114, one who attempts postal robbery is treated the same as one who actually effects such robbery, and, accordingly, attempted postal robbery is also not 'a lesser offense [which] is necessarily included within the offense charged.'") (citation omitted).  Therefore, any attempt to commit postal robbery of an aggravated nature, by the terms of the statute, requires wounding or putting a person's life in danger by use of a dangerous weapon.  This aggravated offense is thus a crime of violence, because it requires the "attempted use . . . of physical force against another person" as an element of the offense.  The Government now argues for the first time that the jury's jury verdict represents a conviction for attempted postal robbery in its aggravated form.[5]  ECF 175.

## B. Analysis

With this understanding, I must turn to examine the *Shepard* documents to determine under which subsection the jury convicted Thomas.  There are three *Shepard* documents to evaluate: the indictment, the jury instructions, and the verdict form.  The Indictment in part literally tracks the language of the statute, charging attempted aggravated postal robbery that "put in jeopardy the life of [a postal service] employee by the use of a dangerous weapon."  *See* ECF 1 at 1-2.  The way in which the Indictment is worded effectively recognizes that for a conviction of the aggravated offense, the jury must find that Thomas put the postal clerk's life in jeopardy.

---

[5] In prior briefing, the Government had conceded that it was not clear from the record whether the jury convicted Thomas of the aggravated offense or not, "given that the verdict sheet did not ask the jury to find the enhancement element with respect to either of the attempted postal robbery charges."  ECF 169 at 5.  The Government has reconsidered its earlier position, and now argues based on the indictment and the jury instructions that the "the aggravated crime was the exclusive basis of the convictions."  ECF 183 at 2.  This distinction is critical to the Government's analysis, as discussed below.

But the jury instructions neither specifically define nor address the aggravated offense. Read in their entirety, the instructions allowed the jury to convict for less:

> Mr. Thomas is charged with attempt to commit the crime of robbery of a postal employee. An attempt to rob a postal employee is a federal crime even though the defendant did not actually complete the crime of robbery of a postal employee.
>
> In order to find Mr. Thomas guilty of attempting to rob a postal employee, you must find that the government proved beyond a reasonable doubt each of the following two elements: first, that Mr. Thomas *intended to commit* the crime of robbery of a postal employee, as I will define that offense; and second, that Mr. Thomas *performed an act constituting a substantial step toward the commission of robbery of a postal employee*, which strongly corroborates or confirms that Mr. Thomas intended to commit the crime.
>
> \*\*\*
>
> With respect to the first element of attempt, you may not find Mr. Thomas guilty of attempt to commit robbery of a postal employee merely because he thought about it. You must find that the evidence proved beyond a reasonable doubt that Mr. Thomas' mental state passed beyond the stage of thinking about the crime to actually intending to commit it.
>
> With respect to a -- the substantial step element, you may not find Mr. Thomas guilty of attempt to commit robbery of a postal employee merely because he made some plans to or some preparation for committing that crime. *Instead, you must find that Mr. Thomas took some firm, clear, undeniable action to accomplish his intent to commit robbery of a postal employee. However, the substantial step does not require that the government prove that Mr. Thomas did everything except the last act necessary to commit the crime.*
>
> The crime of robbery of a postal employee consists of the following three elements: first, that the defendant attempted to take money of the United States from the person or presence of a postal employee having lawful charge, control, and custody of such money, and that the defendant took such property by means of force and violence or by means of intimidation, and the defendant put the life of a postal employee who had charge, control, and custody of such money of the United States in jeopardy by use of a dangerous weapon.

Tr. Apr. 15, 19:21-21:20, ECF 153 (emphasis added). Thus, the instructions did not require the jury to find the required element that a postal worker's life was "put in jeopardy," but required only intent and a substantial step toward completion of the crime.

7

More importantly, this construction of the offense does not qualify as a "crime of violence" for § 924(c) under *Taylor*. There, the United States Supreme Court held that attempted Hobbs Act robbery did not qualify as a crime of violence under § 924(c). As it explained:

> Under the portion of the Hobbs Act relevant here, to win a conviction for a *completed* robbery the government must show that the defendant engaged in the "unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force." § 1951(b). From this, it follows that to win a case for *attempted* Hobbs Act robbery the Government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end."

142 S. Ct. at 2020 (emphasis in original). Proceeding from that premise, the Court concluded that attempted Hobbs Act robbery does not satisfy the elements clause of § 924(c) because "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* The Court further reasoned that if the defendant was "apprehended before he reaches his robbery victim and thus before he has actually engaged in threatening conduct, proof of his purpose to engage in such conduct can justify a conviction of attempted robbery so long as his intention and some other substantial step are present," even though no threatened or attempted violence would have actually occurred. *Id.* at 2020-21 (cleaned up). The instructions here thus allowed for a conviction on a basis *Taylor* deemed inadequate to constitute a crime of violence.

The Government attempts to distinguish *Taylor* by arguing that,

> [t]he crime of an attempt to commit a robbery by wounding the victim or putting his life in jeopardy with use of dangerous weapon is different . . . [because] any attempt to wound or to put another's life in jeopardy by using a dangerous weapon falls squarely within the reference in the elements clause to 'attempted use' of force.

ECF 175 at 9. This falls short in two respects. First, *Taylor* precludes the possibility that every attempt to commit a violent crime is also independently a "crime of violence." Indeed, the Court in *Taylor* explicitly rejected this argument:

> The elements clause does not ask whether the defendant committed a crime of violence *or* attempted to commit one. It asks whether the defendant *did* commit a crime of violence—and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force. If Congress had wanted the elements clause to do the kind of work the government supposes, it could have easily said so. For example, it might have swept in those federal crimes that require as an element "the use or threatened use of force" *and* those "that constitute an attempt to commit an offense that has such an element." But that simply is not the law we have.

142 S. Ct. at 2021-22 (emphasis in original).

Second, under the plain statutory language, an aggravated attempted postal robbery explicitly requires wounding or putting the postal clerk's life in jeopardy, not simply taking a substantial step toward doing so. This is confirmed by the Third Circuit's decision in *United States v. Davis*, 560 F.2d 144 (3d Cir. 1977).[6] There, the Court held that:

> In order to sustain a guilty verdict on . . . the aggravated form of the offense, the evidence must show that the [victim] has had his life placed in jeopardy by use of a dangerous weapon. The test of whether a person's life has been placed in jeopardy is an objective one. Neither the fear of the victim nor the intent of the holder of the weapon to harm his victim is necessary to the determination. Rather, the victim's life must have been *actually* placed in danger by the use of dangerous weapon.

*Id.* at 147 (emphasis added); *see also Garcia-Duarte,* 718 F.2d at 47. Therefore, the crime of aggravated attempted postal robbery, by the terms of the statute, requires a finding that a person's life was actually placed in jeopardy. The instructions here did not sufficiently define the elements necessary for such a conviction.

That does not end the inquiry, though, because the verdict form provides further insight into the bases for both convictions.[7] I note first that neither the interrogatory for Count One (the

---

[6] *Davis* was issued as a *per curiam* opinion, but the Court explained that it was prepared by Judge Kalodner before his death, and then fully adopted by the other members of the panel, Judges Rosenn and Garth.

[7] Neither party comprehensively discussed the verdict form. But the verdict form is a *Shepard* document I may consider, *Johnson,* 559 U.S. at 144, and it plays an important role in further framing the issues decided by the jury.

9

Yeadon robbery) nor for Count Three (the Darby robbery), which address the attempted postal robbery charges, require the jury to distinguish between aggravated postal robbery and postal robbery *simpliciter*. ECF 105 at 1-2. But the verdict form includes other questions about the use of a firearm relevant to the issue. As to the Darby robbery, in resolving Count Four of the Indictment, the jury was asked to decide a special interrogatory. There, it determined that Mr. Thomas "brandished" a firearm while attempting the robbery of the Darby Post Office (Count Three). *Id.* at 2. Although the jury instructions do not define "brandish," the commonly understood, dictionary definition of brandish is "to shake or wave, as a weapon; flourish." *Brandish*, Dictionary.com, https://www.dictionary.com/browse/brandish (last visited Aug. 30, 2023). Because I am confident that brandishing a firearm is sufficient to "put [a postal clerk's] life in jeopardy by the use of a dangerous weapon," 18 U.S.C. § 2114(a), a verdict of guilty for brandishing suffices to establish all the elements required for the aggravated offense with respect to the attempt to rob the Darby Post Office. Thus, although the instructions might have allowed a conviction for less, the verdict form establishes that the jury's verdict incorporated the elements required for conviction of the aggravated offense. And, as discussed above, the aggravated attempted offense as set forth in the statute is categorically a "crime of violence" and, thus, a proper predicate crime for the conviction of § 924(c) in Count Four. I will therefore deny Mr. Thomas' motion as to Count Four.

But the analysis is far more difficult with respect to the conviction for the attempted postal robbery in Count One, the Yeadon Post Office. In addressing use of a firearm as charged in Count Two, the jury was not asked to consider whether Mr. Thomas brandished a weapon. And as noted above, the jury was not asked to specifically determine whether Thomas put any person's life in jeopardy during either postal robbery. With respect to the Yeadon robbery, the jury was only asked

10

to address whether Mr. Thomas was guilty of "using and carrying a firearm."[8] The jury instructions defined "use" of a firearm as requiring "more than mere possession . . . . To establish use, the government must show active employment of the firearm. If Mr. Thomas did not either disclose or mention the firearm or actively employ it, Mr. Thomas did not use the firearm." Tr. Apr. 15, 22:13-18, ECF 153. The question then is whether the jury's verdict that Thomas "used" a weapon during the attempted robbery is sufficient to establish that he "put [a person's] life in jeopardy."

Returning to *Davis*, the Third Circuit held that the test is whether the use of a weapon "actually" placed a person's life in danger. 560 F.2d at 147. The necessary implication that follows is that not *every* use of a dangerous weapon *does* put a person's life in danger. In *Davis*, the Court cited the defendant's conduct in pointing a loaded gun at a postal driver with a threat to kill him as sufficient to convict of the aggravated offense. *Id.* at 147-48. The precedent *Davis* cited involved similarly overt, threatening conduct. *See, e.g.*, *Speed v. United States,* 518 F.2d 75, 76-77 (8th Cir.), *cert. denied*, 423 U.S. 988 (1975) (affirming conviction where armed robber threatened clerk and his wife with physical harm); *Kirk v. United States,* 457 F.2d 400, 401-02 (6th Cir.), *cert. denied*, 409 U.S. 987 (1972) (upholding conviction where jury was instructed to find that victim's life was "actually put in jeopardy" from the use of a dangerous weapon, and where defendant pointed a weapon at victim and made threatening statements); *United States v. Thomas,* 455 F.2d 320, 322 (6th Cir. 1972) (finding that the objective standard of putting a life in jeopardy was met when three robbers with guns repeatedly threatened a postmistress and her family); *United States v. Beverley,* 416 F.2d 263, 264-65 (9th Cir. 1969) (maintaining that evidence of a loaded gun pointed at mail custodians was sufficient to show that "lives were in fact in

---

[8] Notably, 18 U.S.C. § 924(c) only requires that the jury find a defendant "use[d] *or* carrie[d] a firearm" during a crime of violence.

11

jeopardy"); *Smith v. United States*, 284 F.2d 789, 790-92 (5th Cir. 1960) (finding the objective standard for life in jeopardy met when defendants brandished a loaded gun and long-bladed knife and made threatening statements to discourage resistance); *Schwartz v. United States,* 160 F.2d 718, 719-20 (9th Cir. 1947) (affirming conviction when a masked robber carrying a loaded pistol placed a mail driver in the back of a truck and taped his eyes).

Here, the jury instructions defined "use" in a way that permitted a conviction based on simply the mention of a weapon, even if no threat was made. The jury found that use occurred, but the *Shephard* documents do not reveal the basis for that verdict, and the jury was never charged with specifically determining whether Thomas' conduct placed the victim's life in jeopardy. And *Davis* makes clear that a victim's subjective reaction does not suffice. Given the statutory definition of the aggravated offense, and the *Davis* test requiring that the use of a dangerous weapon "actually placed" the victim's life in danger, I conclude that mere mention of a gun use cannot suffice for conviction of the aggravated offense.[9] I therefore cannot determine from the *Shepard* documents if the jury convicted Mr. Thomas of aggravated attempted postal robbery or attempted postal robbery *simpliciter* in Count One.

Because the record does not make clear the provision of the statute under which Thomas was convicted for the Yeadon robbery in Count One, I cannot apply the modified categorical approach when determining whether that conviction forms a proper predicate for the § 924(c) conviction in Count Two. And, as the Government concedes, the non-aggravated offense compels the conclusion that the statute is not categorically a crime of violence. As a result, I will grant Mr. Thomas' motion as to Count Two.

---

[9] I am aware that some circuits have held that any use is *per se* sufficient for a conviction of the aggravated offense. *See, e.g.*, *United States v. Lawrence*, 699 F.2d 697, 702 (5th Cir. 1983); *United States v. Rodriguez*, 925 F.2d 1049 (7th Cir. 1991). I view those decisions as inconsistent with the Third Circuit, and question whether such a rule renders the language of the statute defining the aggravated offense superfluous.

12

**III.     Conclusion**

For the reasons set forth above, Defendant's motion to reconsider the order denying his § 2255 motion is granted in part and denied in part.  A resentencing will be scheduled at a later date. An appropriate order follows.

        /s/ Gerald Austin McHugh
        United States District Judge